UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-115 |
| | ) | |
| RICHARD THOMAS FORRESTER | ) | |

## **MEMORANDUM AND ORDER**

The defendant pled guilty to possessing five grams or more of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). He will be sentenced on July 11, 2019.

The United States Probation Office has prepared and disclosed its Presentence Investigation Report ("PSR") finding the defendant to be a career offender pursuant to United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 4B1.1. [Doc. 45]. The defendant has filed two objections to the PSR and the United States has responded in opposition. [Docs. 48-50, 56]. For the reasons that follow, the defendant's first objection will be overruled and his second objection will be sustained.

I.

*Objection One*

Were the defendant not deemed a career offender, the PSR would assign him 11 criminal history points, placing him in criminal history category V. The defendant objects to the assignment of one criminal history point for an Oklahoma child endangerment conviction listed at paragraph 32 of the PSR. Specifically, the defendant objects that "there

was never a conviction where an actual sentence was imposed in this matter." [Doc. 50, p.1].

According to documentation provided by the probation office, the defendant entered a plea of *nolo contendere* to the child endangerment charge and was found guilty. He received a "deferred judgment and sentence" for the child endangerment count to include a five-year term of probation. The PSR in this case assigns one criminal history point pursuant to U.S.S.G. § 4A1.1(c) for that "prior sentence."

"The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (2018). "A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ." *Id.* § 4A1.2(f). As such, the defendant is correctly assigned one point for his Oklahoma child endangerment conviction, and his first objection will be overruled.

Additionally, even if the defendant's first objection were granted, he would still have 10 criminal history points and would still fall within criminal history category V. The issue is therefore moot.

II.

*Objection Two*

A. Background

*With* application of the career offender guideline, the defendant's total offense level is 31, his criminal history category is VI, and his advisory guideline range is 188 to 235 months. *Without* application of the career offender guideline, the defendant's total offense level would be 23, his criminal history category would be V, and his advisory guideline range would be 84 to 105 months.

Under the guidelines,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). At issue in this case is whether the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The PSR bases its career offender designation on three prior convictions, one for Tennessee robbery [Doc. 45, ¶ 38] and two other Tennessee convictions for what the PSR describes as possession of methamphetamine with intent to sell [*id.*, ¶ 36] and possession of methamphetamine for resale [*id.*, ¶ 39]. The defendant does not formally object to the robbery predicate but argues that neither methamphetamine conviction can be used as a basis for career offender status in light of the Sixth Circuit Court of Appeals' recent *en*

3

*banc* decision in *United States v. Havis*, No. 17-5772, 2019 WL 2376070 (6th Cir. June 6, 2019).[1]

## B. *Havis* and the Tennessee Code

The unanimous *en banc Havis* Court held that the United States Sentencing Commission exceeded its authority by expanding—in an application note—the guidelines' definition of the term "controlled substance offense." *Havis*, 2019 WL 2376070 at *3 ("The Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses.").

Havis's PSR had raised his offense level due to what the *Havis* Court termed a prior "Tennessee conviction for selling and/or delivering cocaine" in violation of Tenn. Code Ann. § 39-17-417(a)(2)-(3). *Id.* at 1. "Under Tennessee law, 'delivery' of drugs means "the actual, constructive, *or attempted* transfer from one person to another of a controlled

---

[1] Although he did not formally object to the use of his robbery conviction as a career offender predicate, the defendant's June 25, 2019 sealed *sentencing memorandum and motion for downward departure* argues—for reasons which best remain under seal—that the robbery "should not be used as a predicate offense for career criminal [sic] because his plea was not voluntary." [Doc. 54, p.7]. The PSR in this case was disclosed on June 5, 2019, and objections were due on June 19, 2019. *See* Fed. R. Crim. P. 32(f)(1). "Objections" include challenges "to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." *Id.* Under that definition, the defendant's argumentation regarding his robbery conviction is plainly an untimely objection to his PSR, tucked away in a sentencing memorandum rather than presented as a formal objection as required by this Court and the Federal Rules. As such, the untimely objection has not been considered. Further, because the defendant's downward departure motion contains an untimely objection, that document will be denied with leave to renew and the clerk will be directed to remove that filing from the record in this case. Lastly, the Court notes that the untimely objection would in any event be overruled because the defendant cites no authority by which he can challenge the validity of a prior state conviction by way of a PSR objection in a subsequent federal prosecution.

substance." *Id.* (emphasis in original) (quoting Tenn. Code. Ann. § 39-17-402(6)). As noted, *Havis* concluded that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes." *Havis*, 2019 WL 2376070 at *4. "Because the least culpable conduct covered by § 39-17-417 is attempted delivery of a controlled substance," the Sixth Circuit concluded that Havis's offense level should not have been increased on the basis of a prior "controlled substance offense." *Id.* The case was remanded to the district court for resentencing. *Id.*

In the case now before this Court, documentation provided by the probation office indicates that the challenged convictions were under Tenn. Code Ann. § 39-17-<u>434</u>(a)(4), rather than §39-17-<u>417</u>(a)(2)-(3) as in *Havis*. Section 39-17-434(a) provides,

>  (a) It is an offense for a defendant to knowingly:
>
>  (1) Manufacture methamphetamine;
>
>  (2) Deliver methamphetamine;
>
>  (3) Sell methamphetamine; or
>
>  (4) Possess methamphetamine with intent to manufacture, deliver or sell methamphetamine.

Tenn. Code Ann. § 39-17-434(a). Section 417(a) of the Tennessee Code is identical to Section 434(a), with the exception that the former generally addresses "controlled substances" and the latter specifically addresses "methamphetamine." As such, in its analysis the Court has considered state authority addressing both statutes.

5

C. Analysis

*Havis* concluded that a violation of Tenn. Code Ann. § 39-17-417(a)(2) (knowing delivery of a controlled substance) cannot be a career offender predicate because Tennessee's definition of "delivery" encompasses attempt offenses, which are not included in the guidelines' definition of "controlled substance offense."[2] The question before this Court is whether *Havis* dictates the same result for a violation of Tenn. Code Ann. § 39-17-434(a)(4) (knowingly possessing methamphetamine with the intent to manufacture, deliver, or sell), a statute which also flows in part from the Tennessee definition of "delivery."

According to the United States, *Havis* does not control here. The United States offers the argument that § 39-17-434(a)(4)'s *actus reus* is possession (as in possession with intent), and the methods of delivery or sale or manufacture are the *mens rea*. As the Court interprets the Government's argument, under *Havis* attempted delivery is no longer a guidelines "controlled substance offense" but possession with intent to attempt delivery still is. No authority is cited in support of this proposition. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted). Additionally, the Government twice misquotes the guidelines' definition of

---

[2] "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, distribution or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. § 4B1.2(b).

6

"controlled substance offense," incorrectly claiming that "possession with intent to deliver" is included in that definition. [Doc. 56, p.2; doc. 57, p.2]. <u>It is not</u>. On the record before it, the Court is unable to accept the United States' unsupported and undeveloped position.

The Court thus turns its focus to the question of whether it can look to the record in this case to decide whether the defendant's § 39-17-434(a)(4) convictions were for possessing methamphetamine with the intent to manufacture it *or* deliver it *or* sell it. "To determine whether a given law is a controlled substance offense within the meaning of USSG 4B1.2(b), [courts] apply the two-step 'categorical approach.'" *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. 2018) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016)).

> First, we ask if the statute is divisible—that is, if it lists *elements* in the alternative such that the statute comprises multiple, alternative versions of the crime. If so, we employ the modified categorical approach and consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction. At the second step, we determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a controlled substance offense.

*Pittman*, 736 F. App'x at 554 (citations and quotations omitted) (emphasis added).

> The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. Given [the] indifference to how a defendant actually committed a prior offense, the court may ask

7

only whether the *elements* of the state crime and generic offense make the requisite match.

*Mathis*, 136 S. Ct. at 2256 (citation omitted) (emphasis in original). A district court's "elements or means?" inquiry will be "easy" if "a state court decision definitively answers the question." *Id.* A court can also look to jury instructions and, where helpful, the indictment and judgment of the prior conviction to evaluate whether the alternatively phrased statute lists "elements" or "means." *Id.* at 2256-57.

This Court's review indicates that Tenn. Code Ann. § 39-17-434(a)(4)'s alternates of "manufacture, deliver, or sell" are *means* of satisfying the statutory *element* of possession with intent. In discussing a § 39-17-417(a)(4) indictment which "did not indicate whether the State was going to prove the offense as possession with intent to manufacture [or] deliver [or] sell," the Tennessee Supreme Court observed that "the State is not required to allege the specific theory *or means* by which the State intends to prove each element of an offense." *State v. Carter*, 121 S.W.3d 579, 588 (Tenn. 2003) (emphasis added). The Tennessee Court of Criminal Appeals has similarly stated—regarding § 39-17-417—that

> [t]he offense has three elements: (1) knowing possession, (2) of contraband, (3) with the intent to manufacture, deliver, or sell it. Thus, the crime can be committed with any of the three proscribed intents and can, accordingly, be charged in separate *alternative* counts with each count specifying one of the three proscribed intents. As we have previously made clear, "[t]he state may charge different means of conducting the same drug transaction in anticipation of the uncertainty of the evidence."

*Taylor v. State*, No. W2011-00027-CCA-R3-PC, 2012 WL 432856, at *5 (Tenn. Crim. App. Feb. 7, 2012) (emphasis in original). Other Tennessee cases seem to also indicate

that possession with intent is an element, and that manufacturing, delivering, or selling are means to that elemental end. *See, e.g., State v. Hunley*, No. W2018-00648-CCA-R3-CD, 2019 WL 951404, at *2 (Tenn. Crim. App. Feb. 26, 2019); *State v. Belew*, 348 S.W.3d 186, 189 (Tenn. Crim. App. 2005).

The Court has also considered the Tennessee Pattern Jury Instruction for § 39-17-417(a)(4), which provides,

> Any person who knowingly possesses, with intent to [deliver] [sell] a controlled substance is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
>> (1) the defendant knowingly possessed [specify controlled substance], a Schedule [insert schedule number] controlled substance;
>>
>> and
>>
>> (2) the defendant intended to [deliver] [sell] such controlled substance.

Tenn. Pattern Jury Instructions § 31.04 (footnotes omitted); *see also Taylor*, 2012 WL 432856, at *3 (second element of trial court's jury charge was "that the defendant intended to sell *or* deliver such controlled substance") (emphasis added). The Court has also looked to the relevant state court records provided by the probation office. For the challenged conviction at paragraph 36 of the PSR, the indictment alleges that the defendant possessed methamphetamine "with the intent to deliver or sell," whereas the judgment states that the "Indicted Offense Name" is merely possession with intent to sell. These sources, while less persuasive than the Tennessee caselaw cited above, still bolster the conclusion that the

9

state courts of Tennessee view "manufacture, delivery, or sell" as *means* of carrying out the "possession with intent" *element* of §§ 39-17-417(a)(4) and 39-17-434(a)(4).

The Court therefore concludes that Tenn. Code Ann. § 39-17-434(a)(4) is indivisible. The Court must then look to the least of the acts criminalized by that statute, *Havis*, 2019 WL 2376070, at *2, which is possession with intent to deliver (which in turn includes attempt offenses). Under *Havis*, attempt offenses are not "controlled substance offenses" as defined by the guidelines. The defendant therefore is not a career offender, as his convictions at PSR paragraphs 36 and 39 are not career offender predicates. His second objection will accordingly be sustained.[3]

### III.

### *Conclusion*

As provided herein, the defendant's objections to his PSR [doc. 50] are **OVERRULED IN PART and SUSTAINED IN PART**. The defendant's first objection is **OVERRULED** and his second objection is **SUSTAINED**.

The defendant is no longer deemed a career offender. As such, his total offense level is reduced to 23, his criminal history category is reduced to V, and his advisory guideline range is now 84 to 105 months.

---

[3] This case will likely be appealed, and the appellate briefing will no doubt be extensive if not apocalyptic. By contrast, the Court is compelled to note the near dearth of meaningful briefing presented on the instant objections. Each side has offered minimal developed argumentation (unaccompanied by any cited authority) to this Court squaring or distinguishing *Havis* on the facts of this case.

Further, as provided in footnote one of this memorandum and order, the defendant's "Sentencing Memorandum and Motion for Downward Departure" [doc. 54] is **DENIED WITH LEAVE TO RENEW**. The Clerk of Court is directed to remove document 54 from the docket in this case.

Sentencing remains set for Thursday, July 11, 2019, at 10:00 a.m. in Greeneville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge